PER CURIAM.
Leon and Virginia Clardy, individually and doing business as Paradise Trailer Park (hereinafter “Paradise”), brought a class action against Tri-Community Water System (hereinafter “Tri-Community”) on July 24, 1989, alleging that a rate structure, known as the “multiple user policy,” which Tri-Community’s board of directors had adopted, was void because, they alleged, it violated the corporation’s by-laws. The trial judge entered a summary judgment in favor of Tri-Community, and the Clardys appeal.
Tri-Community, incorporated in 1962, provides water to approximately 1,900 members. Paradise, comprised of 35 mobile homes, has been a member of TriCommunity since 1977. One Tri-Community service line extends to Paradise’s property line, where one meter measures the amount of water the trailer park’s occupants consume. From that point, separate water lines owned by Paradise distribute water to the individual mobile homes. Paradise charges the occupants of the park a flat monthly fee for the water. Tri-Com-munity, in turn, charges its members a flat monthly fee of $7 for the first 3,000 gallons of water used; the cost for amounts consumed above 3,000 gallons is calculated according to a graduated scale, with charges decreasing as more water is used.
In 1967, pursuant to its authority under the by-laws “[t]o fix the charges, rates and connection fees to be paid by each member for services rendered by the corporation to him,” Tri-Community’s board of directors adopted the following “multiple user policy”:
“All additional tap-ons to other Living Quarters (trailer or house) made by a member (even though said living quarters [are] on the same lot) must receive prior approval by the Tri-Community Water System. Any such addition, connection or connections, if approved by the Water Board, will make the member subject to an additional $4.50 minimum water bill and the per thousand cost will graduate in proportion to the number of connections. For purposes of this resolution, the term additional Living Quarters is defined as living quarters for a separate family unit. Nothing in the foregoing would [a]ffect the rule that each obviously distinct lot must be metered separately].” [1]
Pursuant to that rule, Paradise was charged 35 separate flat fees of $7 rather than one flat fee representing the Tri-Com-munity line that services the trailer park.
*67 Paradise contends that the multiple user policy violates the following two sections of Article XI of Tri-Community’s by-laws:
“Section 2. Each member shall be entitled to purchase from the corporation, pursuant to such agreements as may from time to time be provided and required by the corporation, such water for domestic, commercial, agricultural, industrial or other purposes as a member may desire, subject, however, to the provisions of these by-laws and to such rules and regulations as may be prescribed by the Board of Directors. Each member shall be entitled to have delivered to him through a single service line only such water as may be necessary to supply the needs of such member, including his family, business, agricultural or industrial requirements. The water delivered through each service line shall be metered and the charges for such water shall be determined separately, irrespective of the number of service lines owned by a member.
[[Image here]]
“Section 4. The Board of Directors shall, with the consent of the Farmers Home Administration, so long as it shall either hold or guarantee any financing of the System, prior to the beginning of each calendar year, determine the flat minimum monthly rate to be charged each member during the following calendar year for a specified quantity of water, such flat minimum monthly rate to be payable irrespective of whether any water is used by a member during any month, and the amount of additional charges, if any, for additional water which may be supplied the members, shall fix the date for the payment of such charges, and shall notify each member of the amount of such charges and the dates for the payment thereof...”
(Emphasis added.)
In order to affirm the summary judgment in favor of Tri-Community, we must find that there was no genuine issue of material fact and that Tri-Community was entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. Although the parties construe various aspects of the pertinent by-laws differently, there is no issue of material fact. Thus, we must determine whether Tri-Community merited a judgment as a matter of law.
We begin by noting the following:
“Corporate documents such as by-laws and membership certificates are equivalent to contracts among the members of the organization. H. deck, [.Nonprofit Corporations, Organizations and Associations, ch. 42 (4th ed.1980)] at 985. Accordingly, normal rules of construction for contracts apply. The initial question is to determine, as a matter of law, whether the contract is ambiguous. Extrinsic evidence may be considered to resolve a latent ambiguity arising from some collateral matter outside the writing. If the contract is not ambiguous, then its interpretation is a matter of law for the court to determine without reference to extrinsic evidence.”
Black v. Glass, 438 So.2d 1359, 1367 (Ala.1983).
We find the provisions of §§ 2 and 4 of Article XI quite clear and unambiguous. Those sections explicitly require, prior to each calendar year, the consent of the Farmers Home Administration “FmHA”) in determining the flat monthly minimum rates to be charged members as well as notice to the members of the amounts of such charges and the dates for payments.
Both William Somerall, chief of community and business programs with the FmHA, and Andrea Sadler, secretary-treasurer of Tri-Community, admitted in their depositions that Tri-Community’s board of directors had not obtained FmHA’s consent prior to adopting the multiple user policy. Moreover, Tri-Community’s attorney admitted at the hearing on the corporation’s motion for summary judgment that "TriCommunity does not have any written documentation evidencing that it sought annual permission from [FmHA] — or consent from the [FmHA] whenever its rates were to remain unchanged but only did so and provided notice to its members when a rate change was to be implemented.” Although *68 the multiple user policy did not increase the amount of the flat monthly fee, the effect of the policy was to increase, overall, Paradise’s “flat” monthly fee. Tri-Community’s attorney also admitted at the summary judgment hearing that “Tri-Community System did not notify its membership of the rates on an annual basis but only notified the membership whenever a rate change was taking place.”
More important, however, are the references in § 2 to both the line serving each member and the number of service lines each member owns. We read the last sentence of § 2 as providing that each TriCommunity service line (“each service line”) shall be metered and charges for water determined accordingly, regardless of the number of service lines each member owns (“irrespective of the number of service lines owned by a member”).
Based on the foregoing, we hold that Tri-Community’s multiple user policy violated Article XI, §§ 2 and 4, of its by-laws and that it was not entitled to a judgment as a matter of law. Consequently, the summary judgment in its favor is reversed, and this case is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, ADAMS and INGRAM, JJ., concur.

. The $4.50 flat fee was increased in 1980 to $5.50 and again in 1984 to $7.